# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MARY ROSEMOND,

                              :

          Petitioner,                    Case No. 1:10-cv-254

                              :         District Judge Sandra S. Beckwith

    -vs-                                Magistrate Judge Michael R. Merz

WARDEN, Ohio Reformatory for Women,

                              :

          Respondent.

---

## REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought pursuant to 28 U.S.C. § 2254 by Petitioner Mary Rosemond. She was convicted of murder and aggravated robbery, both with firearm specifications, in the Hamilton County Common Pleas Court and is serving a sentence of twenty-eight years to life imprisonment in Respondent's custody. With the assistance of counsel, she pleads one ground for relief:

> **Ground One:**
>
> Appellate counsel for Ms. Rosemond rendered ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments, *Evitts v. Lucey*, 469 U.S. 387 (1985), and *Strickland v. Washington*, 466 U.S. 668 (1984), when he failed to raise on appeal a meritorious *Batson* issue.
>
> **Supporting Facts:**
>
> The prosecutor's purported race-neutral reasons for removing prospective juror Anthony were a pretext for racial discrimination. The prosecutor claimed that it exercised a peremptory challenge because Mr. Anthony "not only was a pastor, but also had worked

with people charged with crimes in an effort to rehabilitate them."
But the State did not strike prospective juror York, who was not an
African American and was also a pastor.  The State also questioned
Anthony and York in a considerably different manner, asking the
former, but not the latter, whether he had ever tried to "salvage
somebody."  The State exercised each of its three peremptory
challenges to remove African-American prospective jurors, which the
trial court permitted over objection.  Defense counsel asserted that
the prosecutor's purported race-neutral reasons were merely a pretext
for racial discrimination.  Appellate counsel did not raise an
assignment of error challenging this violation of Ms. Rosemond's
rights under the Fourteenth Amendment and *Batson*.

(Petition, Doc. No. 1, PageID 5.)


## Procedural History


Ms. Rosemond conspired with two others to rob a taxi driver.  After the money was given

up, George Williams, one of the three, shot the taxi driver to death.  All three co-conspirators were

indicted for aggravated murder and aggravated robbery, with firearm specifications on both counts.

A jury convicted Ms. Rosemond of the lesser included offense of murder, of the aggravated robbery,

and of both firearms specifications, which were merged for sentencing.

On direct appeal, Ms. Rosemond alleged trial court error in not allowing her to play a tape

to impeach a witness and not permitting a defense expert to testify.  After affirmance by the First

District Court of Appeals, an attempted delayed appeal to the Ohio Supreme Court on these two

issues was not accepted.

Petitioner first raised the issue presented in this case by moving to reopen her direct appeal

under Ohio R. App. 26(B), the vehicle Ohio provides for rasing the issue of ineffective assistance

of appellate counsel.[1]  When she was unsuccessful, she sought further review in the Ohio Supreme

Court, which declined to hear the case.  The Petition in this case followed.

## Analysis

When a federal constitutional claim presented in habeas corpus has first been decided on the

merits in the state courts, the federal courts may grant the writ only if the state court decision was

contrary to, or an objectively unreasonable application of, clearly established United States Supreme

Court precedent.  28 U.S.C. § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362, 403-404 (2000); *Bell*

*v. Cone*, 535 U.S. 685, 693-94 (2002); *Brown v. Payton,* 544 U.S. 133, 134 (2005).

In denying Ms. Rosemond's Application to Reopen, the First District Court of Appeals stated

the standard of decision as follows:

> An application to reopen an appeal must be granted if the applicant
> establishes "a 'genuine issue' as to whether he has a 'colorable claim'
> of ineffective assistance of counsel on appeal.'" App.R. 26(11)(5);
> *State v. Spivey*, 84 Ohio St.3d 24,25, 1998-0hio-704, 701 N.E.2d 696.
> The United States Supreme Court's decision in *Strickland*
> *v.Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, provides the
> standard for determining whether the applicant was denied the
> effective assistance of appellate counsel. *See State v. Reed,* 74 Ohio
> St.3d 534, 535, 1996-0hio-21, 660 N.E.2d 456. He must prove "that
> his counsel [was] deficient for failing to raise the issues he now
> presents and that there was a reasonable probability of success had
> [counsel] presented those claims on appeal." *State v. Sheppard*, 91
> Ohio St.3d 329, 330, 2001-0hio-52, 744 N.E.2d 770, *citing State v.*
> *Bradley* (1989), 42 Ohio St. 3d 136,538 N.E.2d 373, paragraph three
> of the syllabus.

---

[1] The Application also contained two claims relating to sentencing which are not
presented in the Petition.

*State v. Rosemond*, Case No. C-060578 (Ohio App. 1ˢᵗ Dist. Jan. 13, 2009)(copy at PageID 183).

Having noted the standard, the court applied it to this case as follows:

> In her application, Rosemond contends that she was denied the effective assistance of counsel because her appellate counsel failed to assign as error the prosecution's exercise, over her objections, of peremptory challenges to exclude three African-American jurors. Implicit in the trial court's rejection of Rosemond's objections was its determination that Rosemond had failed to prove purposeful discrimination by the prosecution in the exercise of its challenges. Based upon the record of the proceedings below, we cannot say that this determination was clearly erroneous. See *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712; *Hernandez v. New York* (1991), 500 U.S. 352, 111 S.Ct. 1859; *State v. Hernandez* (1992), 63 Ohio St.3d 577, 589 N.E.2d 1310. Therefore, we cannot say that Rosemond's appellate counsel was ineffective in failing to present this claim in her direct appeal.

*Id.* at PageID 184.

This decision by the First District Court of Appeals was clearly made on the merits of Ms. Rosemond's ineffective assistance of appellate counsel claim, so § 2254(d)(1) applies. Petitioner's claim is that, in deciding the merits, the court of appeals unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984)(Traverse, Doc. No. 14, PageID 517). The governing standard from *Strickland* is

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

-4-

466 U.S. at 687.

With respect to the deficient performance prong of the *Strickland* test, the Supreme Court

has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential.
> . . . A fair assessment of attorney performance requires that every
> effort be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged conduct, and
> to evaluate the conduct from counsel's perspective at the time.
> Because of the difficulties inherent in making the evaluation, a court
> must indulge a strong presumption that counsel's conduct falls within
> a wide range of reasonable professional assistance; that is, the
> defendant must overcome the presumption that, under the
> circumstances, the challenged action "might be considered sound trial
> strategy."

466 U.S. at 689.

As to the prejudice prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that,
> but for counsel's unprofessional errors, the result of the proceeding
> would have been different. A reasonable probability is a probability
> sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d

313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally*

Annotation, 26 ALR Fed 218.

A criminal defendant is entitled to effective assistance of counsel on direct appeal as well

as at trial. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v.*

*Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The *Strickland* test applies to appellate counsel. *Smith*

-5-

*v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987).

However, in applying *Strickland* to claims of ineffective assistance of appellate counsel, the particular appellate context must be kept plainly in focus. The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004);*See Smith v. Murray*, 477 U.S. 527 (1986). Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004), *citing Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001), *cert. denied,* 535 U.S. 940 (2002). "Counsel's performance is strongly presumed to be effective." *McFarland, quoting Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)(*citing Strickland*). "To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel ignored issues [which] are clearly stronger than those presented." *Webb v. Mitchell,* 586 F.3d 383, 399 (6th Cir, 2009); *Smith v. Robbins*, 528 U.S. 259, 288 (2000), *quoting Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

It is undisputed that the *Batson* issue was litigated on the merits in the trial court and thus preserved for appeal but not raised. The question for this Court, then, is whether the *Batson* claim was so strong on the merits that the court of appeals decision that failure to raise it was not ineffective assistance of appellate counsel is an objectively unreasonable application of *Strickland*.

From reading the entire voir dire transcript, it appears that the trial court seated prospective jurors 1 through 12 in the jury box and permitted voir dire directed to those twelve.  After both sides passed for cause, the peremptory excuses were exercised as follows:

State's first peremptory used as to Mr. Anthony (Trial Tr. at 189)

Defendant's first peremptory used as to prospective juror Tyirich.(Trial Tr. at 197)

State's second peremptory used as to Ms. Duncan.(Trial Tr. at 204)

Defendant's second peremptory used as to Ms. Hamilton.(Trial Tr. at 210)

State's third peremptory used as to Mr. Neal.(Trial Tr. at 220)

Defendant's third peremptory used as to Ms. Bright. (Trial Tr. at 226)

Defendant's fourth peremptory used as to Mr. Lower.(Trial Tr. at 231)

Two alternate jurors were seated.  As to the alternates, the State did not exercise a peremptory challenge and defense excused Mr. Rothgeb.

It is clear that the initial arguments on *Batson* challenges were heard at sidebar off the record as each *Batson* challenge was made (*See* Trial Tr. at 262, referring to "sidebars" in the plural.)  It appears further that Ms. Rosemond had not participated in the sidebars and her counsel wanted her to hear what had been said (Trial Tr. at 269).  There is no verbatim record of the sidebar discussions, only the summary of them placed of record after jury selection was complete.

According to Judge Kubicki, the first sidebar matter was the *Batson* challenge to the State's first peremptory excuse, that of Mr. Anthony, prospective juror number nine.  (Trial Tr. at 262)  The judge asks the prosecutor to restate the reasons for the excuse briefly (Trial Tr. at 263)  The prosecutor responded "And my concern with Mr. Anthony was that he not only was a pastor but also had worked with people charged with crimes in an effort to try to rehabilitate them." *Id.*  Judge

Kubicki noted that defense counsel, Mr. Rubenstein, had objected during the sidebar and asked if

he had anything to add on the record.  He responded:

> Judge, three peremptories were made by the State of Ohio.  All three
> of them were African Americans.
>
> Mr. York, Mr. Anthony was also a pastor.  We respectfully submit
> that there is a pattern and that these reasons that were given were
> unacceptable under the circumstances.
>
> The juror answered all the questions, said that he could be completely
> impartial despite working with people who have been convicted of a
> crime before.  And a great comparison is Mr. York had the same type
> of responses to those questions.  I know the Court has made the
> decision at this point and we'll just respectfully submit for the record.

(Trial Tr. at 263-264.)  It is clear from Mr. Rubenstein's argument that Judge Kubicki had already

ruled on the *Batson* challenge to the excuse of Mr. Anthony at sidebar.  The judge comments:

> Again, just to be clear, though, with regard to what was discussed at
> sidebar, I know that you did object, but that obviously at that time
> was the first peremptory.  The Court certainly had no way of knowing
> whether Mr. York would be challenged or not at that time.

*Id.*

With respect to prospective juror number ten, the prosecutor indicated the reason he had

given at sidebar was that the prospective juror had a prior conviction and had training in psychology

and a stepfather with PTSD, coupled with advice from defense that they would claim Ms. Rosemond

suffered from PTSD and that caused her involvement in this crime.  (Trial Tr. at 265-266)

With respect to prospective juror number seventeen, the judge's notes reflected that the State

had stated as race-neutral reasons for his excuse that his professional employment was in a capacity

in which he was attempting to rehabilitate people and had been unable to remember that earlier in

voir dire he had said he had been a crime victim.  (Trial Tr. at 267-268)  The prosecutor confirmed

-8-

that those were the reasons he had given during the sidebar.  *Id.*

In general, the prosecutor stated he had no race-based motive for the excuses, and noted that two African Americans had been actually seated for trial and the defense had excused two African Americans (Trial Tr. at 266.)  As for the defense rebuttal that Mr. Anthony had said he could be fair and impartial, the prosecutor noted that defense had excused "two white jurors who indicated that they could be fair and impartial."  *Id.*

At the conclusion of this colloquy, Mr. Rubenstein indicated that he was going through the record exercise so that Ms. Rosemond could hear what had happened.  (Trial Tr. at 269).  Judge Kubicki concluded:

> Again, at the time, during the sidebar, the Court had indicated that Mr. Prem [the prosecutor] had indicated a reasonable reason under the circumstances and the law under *Batson*, that the Court found that Mr. Prem was entitled to exercise a peremptory challenge.

*Id.*

From this colloquy this Court finds that the actual *Batson* challenges took place at sidebar and were ruled on there in several separate sidebar conferences.  No record was made of those conferences or at least no transcript of them was presented to the First District Court of Appeals or is presented here.  During this colloquy, Mr. Rubenstein made no motion to discharge the jury on *Batson* grounds; rather, he stood on the individual challenges he had made at sidebar.

A trial court must use a three-step process to evaluate a *Batson* claim.  First, the opponent must make a *prima facie* showing that the proponent of the strike has exercised a peremptory challenge on the basis of race.  The burden then shifts to the proponent to articulate a race-neutral reason for the challenge.  Finally, the trial court must determine if the opponent has carried his burden of proving purposeful discrimination.  *Purkett v. Elem,* 514 U.S. 765 (1995); *Hernandez v.*

*New York*, 500 U.S. 352 (1991).  To make a *prima facie* showing, a defendant must show that he is a member of a cognizable racial group, that a challenge has been exercised to remove a venireperson of the same race, and any additional facts and circumstances from which an inference could be drawn that the prosecutor had used the peremptory challenge in a race-based manner.  *Batson,* 476 U.S. at 79.

While we do not have a full record of the *Batson* hearing process, this Court infers from the record that we do have that Ms. Rosemond did make a *prima facie* case, that Judge Kubicki called upon the prosecutor to offer a race-neutral explanation of his exercise of each peremptory excuse where a *Batson* challenge was made, that the prosecutor offered an explanation to which defense was permitted to respond, and that ultimately Judge Kubicki concluded that defense had not met its burden of proving intentional racial discrimination.

A trial judge's conclusion that the challenge was race-neutral must be upheld unless it is clearly erroneous.  *Hernandez*; *supra*; *United States v. Tucker*, 90 F.3d 1135, 1142 (6th Cir. 1996); *United States v. Peete*, 919 F.2d 1168, 1179 (6th Cir. 1990).   In denying Ms. Rosemond's 26(B) Application, the Court of Appeals recognized that reversal would have required a holding that Judge Kubicki's conclusion was clearly erroneous.  *State v. Rosemond, supra*, PageID 184.

Neither this Court nor the Court of Appeals has all the evidence or argument which Judge Kubicki heard because it occurred at sidebar.[2]  We do not have any record of the prosecutor's demeanor in making the peremptory excuses, although that would be relevant.  *See Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003).

---

[2] There is no suggestion that the trial court prevented a record of the sidebars from being taken.  There is also no indication that, if a record was made, any attempt was made to have it transcribed and filed in support of the 26(B) Application.

Broader patterns of prosecutorial behavior in the selection process would also be relevant. *Miller-El v. Dretke*, 545 U.S. 231, 253 (2005). We have some of this data: we know that the prosecutor exercised all three of the peremptory excuses provided by Ohio R. Crim. P. 47 to excuse African-Americans. We also know that two African Americans did serve on the jury and that the prosecutor made no attempt to excuse either them or the three excused peremptorily for cause. We do not know how many African Americans were in the venire. There were no waivers of peremptory excuses by either side.[3]

We also do not have any extensive fact finding by the trial judge. While he may have made more extensive findings at sidebar, all that is of record is his summary finding that the defense has not proven purposeful discrimination. However, there is nothing in the Supreme Court's *Batson* jurisprudence which requires extensive fact finding on the record. Petitioner faults both the trial court and the court of appeals for not making more extensive findings or analysis. (Traverse, Doc. 14, PageID 513). However, she cites no authority requiring that the analysis be recited for the record or written.

It is certainly relevant to compare Mr. Anthony who was excused with Mr. York who was not, a comparison emphasized in Petitioner's Traverse (Doc. No. 14, PageID 513). In applying *Batson*, a trial judge should compare the excluded African-American to other persons who were not excluded by the prosecution. *United States v. Torres-Ramos*, 536 F.3d 542 (6th Cir. 2008), relying on *Miller-El v. Dretke, supra*, at 244, and *United States v. Odeneal*, 517 F.3d 406, 420 (6th Cir. 2008).

---

[3] The defense was allowed four peremptory excuses to the State's three, for reasons that are unexplained. See Trial Tr. at 231 and compare Ohio R. Crim. P. 47.

It is true that both Mr. Anthony and Mr. York were pastors.  However, the distinguishing fact on which the prosecution relied was that Mr. Anthony worked with people charged with crimes in an effort to rehabilitate them.  In *Dretke*, the Supreme Court held that "[i]f a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step."  *Miller-El v. Dretke, supra*, at 241. The quotation from voir dire reproduced in the Traverse shows that Mr. York had on occasion been called to the jail to counsel prisoners, although he did not do that "a lot."  Mr. York appears to have been a full-time pastor; at least no other occupation is mentioned in the quoted voir dire.  Mr. Anthony was employed as an instructor assistant in the Cincinnati Public Schools who was a part-time Baptist pastor.

Petitioner notes that "[t]he record contains no indication that Mr. Anthony 'worked with people charged with crimes in an effort to rehabilitate them.'" (Traverse, Doc. No. 14).  That is incorrect.  The record does not contain any document such as a juror questionnaire or any response to a voir dire question in which Mr. Anthony makes this statement.  But, as emphasized above, the record before this Court and which was also before the Court of Appeals does not contain what was said in the sidebar conferences.  What it does contain is Judge Kubicki's recollection, refreshed by his contemporaneous notes, that Mr. Anthony "rehabilitated persons charged with a crime." (Trial Tr. at 263)  Mr. Prem, the prosecutor, confirmed at the same place that that was the basis of his concern.  Mr. Rubenstein, the defense attorney, made no claim that this was a misstatement of fact.

Petitioner emphasizes Judge Kubicki's comment that he could not have known when Mr. Anthony was excused that Mr. York would not also be excused on the basis of his being similarly situated to Mr. Anthony (Traverse, Doc. No. 14, PageID 516.)  From this Petitioner infers

-12-

> that the court believed it could only consider what was known to the
> court when the objected-to peremptory challenge—here, concerning
> Mr. Anthony—was made by the State. In other words, in the view of
> the court, it could not consider the distinct pattern of the State's later
> peremptory challenges, when assessing whether it was proper for the
> State to exclude Mr. Anthony from jury service. Thus, it is readily
> apparent that the trial court made no meaningful effort to perform the
> required third step of the *Batson* analysis, with respect to evaluating
> the persuasiveness of the State's proffered reason for excluding Mr.
> Anthony from the jury.

*Id.* But that argument fails to recognize the sequence of events reflected in the trial court record.
Mr. Rubenstein made a *Batson* challenge to the Anthony peremptory excuse, the State's first, when
it happened and at sidebar.  At that point the State in fact had not exercised any pattern of
peremptory excuses.  Nothing in the *Batson* jurisprudence militates against hearing a challenge when
it first occurs.  And as noted above, Mr. Rubenstein never renewed (at least on the record) a
challenge to the jury as seated after the State had exercised all of its peremptory challenges.

The reasons offered by the prosecutor for the other two African-American peremptory
strikes: prospective juror number ten had a conviction and involvement with PTSD which might
have caused him to favor the defense; prospective juror number seventeen was employed in working
at rehabilitation of those convicted of crimes.  No argument is made in the Traverse that these are
not race-neutral reasons or how they might compare with non-African-Americans who served.

A *Batson* error is structural, so that if Ms. Rosemond had shown on appeal that even one
juror was excluded because of purposeful racial discrimination, she would have been entitled to a
new trial.  *United States v. Angel*, 355 F.3d 462, 470 (6th Cir. 2004), *citing Avery v. Georgia*, 345
U.S. 561 (1953).  Errors of a structural nature cannot be harmless.  *Arizona v. Fulminante*, 499 U.S.
279 (1991).

With respect to the exclusion of Mr. Anthony, Ms. Rosemond had a colorable *Batson* claim to present on appeal.  However, it was not a sure victory, largely because no record was made or preserved for appeal of the sidebar conferences at which the *Batson* argument and analysis was done, Mr. Rubenstein made no motion challenging the seated jury as a whole, and the standard of review was whether the trial judge was clearly erroneous in his conclusion.  Furthermore, Petitioner makes no argument in the Traverse as to why the *Batson* claim was stronger than the two assignments of error actually raised, to wit, failure to permit a tape recording to challenge a prosecution witness and exclusion of an expert.

The Court of Appeals, had it reached the ineffective assistance of appellate counsel claim on the merits, would have had to give substantial deference to the appellate attorney's choice of errors to raise.  Doing so, it could reasonably have concluded that the *Batson* claim would probably not have affected the outcome and therefore it was not defective performance to omit that assignment of error.

Because the Court of Appeals decision is not an objectively unreasonable application of *Strickland v. Washington* in the appellate context, the Petition in this case should be dismissed on the merits with prejudice.  The question is sufficiently close, however, that Petitioner should be granted leave to appeal *in forma pauperis* and a certificate of appealability, should the Court adopt this Report and dismiss her case.  Should the Court disagree with this Report and determine to issue

-14-

the writ, it should be conditional on Petitioner's being granted a new direct appeal and not a new trial.

August 2, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

J:\Documents\Rosemond Habeas R&R.wpd